UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

                                              Case # 15-CR-98-FPG-2

v.

                                              DECISION AND ORDER

ANTHONY NEWBERN,

                    Defendant.
_____

## INTRODUCTION

Defendant Anthony Newbern, one of twelve defendants in *United States v. Myers*, has moved to dismiss his case[1] under the Speedy Trial Clause of the Sixth Amendment and the Speedy Trial Act. ECF No. 287. In the alternative, Defendant moves for release from custody and to sever his case for trial. *Id.* Defendant has been incarcerated for more than 33 months, and he attributes his prolonged custody to his co-defendants' repeated requests for deadline extensions and the allegedly slow pace of the Court's deliberations on co-defendants' motions. For the reasons stated below, Defendant's Motion is DENIED in its entirety.

## DISCUSSION

**I.    Sixth Amendment Claim**

The Sixth Amendment instructs that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Pursuant to that guarantee, Defendant claims that the duration of his current pretrial incarceration has violated his constitutional right to a speedy trial. As a result, he seeks to have the charges against him dismissed with prejudice.

---

[1] The Court assumes the parties' familiarity with the facts and history of this case.

In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court laid out a four-factor balancing test to guide the analysis of speedy trial claims. The relevant considerations identified in *Barker* are: (1) "[l]ength of delay"; (2) "the reason for the delay"; (3) "the defendant's assertion of his right"; and (4) "prejudice to the defendant." *Id.* at 530. Upon review of these factors, Defendant's Sixth Amendment claim fails.

### A. Length of Delay

The *Barker* Court described the length of delay as a "triggering mechanism"—a court need not engage in substantive analysis if the contested delay is not long enough to be presumptively prejudicial. *See id.* Apart from that threshold "triggering" role, the length of delay also functions as one of the four *Barker* factors to be afforded weight. *See Doggett v. United States*, 505 U.S. 647, 651–52 (1992); *see also United States v. Moreno*, 789 F.3d 72, 82 n.10 (2d Cir. 2015). In that respect, if the length of delay is deemed presumptively prejudicial—triggering the *Barker* analysis—the question becomes "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *See Doggett*, 505 U.S. at 652; *see also Moreno*, 789 F.3d at 82 n.10. In both of these roles, the length-of-delay factor is somewhat circumstance-dependent. *See Barker*, 470 U.S. at 530–31 (contrasting the delay permitted "for an ordinary street crime" with the greater delay tolerable "for a serious, complex conspiracy charge"); *see also United States v. Cain*, 671 F.3d 271, 296 (2d Cir. 2012) (reasoning that a delay "of less than 22 months" was "understandable given the presence of multiple defendants, the large number of allegations and the complexity of the racketeering case").

Here, the length of delay triggers further analysis, but—in terms of *Barker*'s balancing test—it weighs only slightly against the Government. Courts have generally deemed delay "approach[ing] one year" sufficient to trigger a *Barker* analysis. *See Doggett*, 505 U.S. at 652 n.1.

Defendant has been incarcerated since May 15, 2015—as of today, over 33 months. However, the two-count indictment in this case charges Defendant and eleven co-defendants with conspiracy (1) "to possess with the intent to distribute, and to distribute, 280 grams or more of a mixture and substance containing cocaine base"; and (2) "to use and maintain a place . . . for the purpose of manufacturing, distributing, and using cocaine base." *See* ECF No. 1. In addition, Defendant himself notes the "thousands of pages of wiretap information that form the basis of the charges in this case." *See* ECF No. 287-1, at 3. Given the number of defendants and nature of the charges against them, this case is complex enough that the length of delay cannot weigh heavily against the Government. *See, e.g.*, *Cain*, 671 F.3d at 296 (assigning a "neutral" weight to the first *Barker* factor in a multi-defendant, complex RICO case); *see also United States v. Alvarez*, 541 F. App'x 80, 84 (2d Cir. 2013) (summary order) (weighing the nearly 29-month delay "only modestly" in the defendant's favor "given the nature of th[e] conspiracy prosecution, with multiple defendants, allegations spanning multiple years and states, and voluminous discovery, including thousands of intercepted phone calls (many in Spanish)").

### B. Reason for Delay

The Second Circuit has observed that, while no one *Barker* factor is independently dispositive, the reason-for-delay factor "is often critical" in the analysis of a speedy trial claim. *Moreno*, 789 F.3d at 79. The *Barker* Court differentiated between three types of delay: (1) deliberate; (2) neutral; and (3) valid. *See Barker*, 407 U.S. at 531. Each type of delay is assigned a different weight under the *Barker* analysis. *Id.* Deliberate attempts to hamper the defense weigh heavily against the Government. *Id.* Neutral factors, like "negligence and overcrowded courts," weigh against the Government, but not as heavily. *Id.* (reasoning that "the ultimate responsibility for such circumstances must rest with the [G]overnment rather than with the defendant"). "Valid

reason[s], such as a missing witness," justify the corresponding delay and do not weigh against any party. *See id.*; *United States v. Tigano*, 880 F.3d 602, 612 (2d Cir. 2018).

Here, the reason for the delay weighs only slightly against the Government. There is no evidence that the Government deliberately attempted to cause any delay. To the contrary, over a year of the delay appears to be attributable to Defendant's co-defendants, many of whom continued to request extensions of time for their pretrial motions. *See, e.g.*, *United States v. Holley*, 638 F. App'x 93, 96 (2d Cir. 2016) (summary order) (contrasting delay created by "bad faith or negligence on the part of the [G]overnment" with delay "attributable to motion practice by [the defendant] and his co-defendant").

Defendant takes issue with those extensions of time, arguing that the Court granted those requests and amended the shared scheduling order "without batting an eyelash." *See* ECF No. 287-1, at 13. However, it does not appear that Defendant ever opposed the requests, nor did they prompt him to seek severance from his co-defendants. While Defendant nevertheless argues that he did not affirmatively join the requests, he also acknowledges that—at one point—he, too, sought additional time. *See* ECF No. 112 (requesting a 30-day extension). Moreover, as Defendant notes, the Court ultimately did "put its foot down" with respect to the requested extensions. ECF No. 287-1, at 13; *see also* ECF Nos. 144, 148 (denying requests for extensions of time).

Defendant also points to the year it took for the Court to decide his omnibus motion. Although some of this delay may be attributable to the Court, within that complained-of year, Defendant's attorney also moved to withdraw from the case. *See* ECF No. 197. The Court conducted oral argument on the issue, granted the motion to withdraw, and assigned entirely new CJA counsel. At most, this period of consideration and resolving other matters—including issues

with co-defendants—constitutes some combination of "neutral" and "valid" delay that weighs only slightly against the Government.

C.   **Defendant's Assertion of His Right**

A defendant's assertion of his speedy trial right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32. The *Barker* Court stressed that "failure to assert the right will make it difficult for a defendant to prove he was denied a speedy trial." *Id.* at 532.

After 32 months, the instant motion contains Defendant's first invocation of his speedy trial right—accordingly, this factor weighs heavily against him. Indeed, Defendant concedes that his case is "not as strong as it should be" for this factor. ECF No. 287-1, at 19. Defense counsel attempts to assign blame elsewhere: he cites a lack of status conferences as depriving Defendant of the opportunity to raise the right; he asks the Court not to hold Defendant responsible for the potential error of his attorneys; and he notes difficulties in communicating with Defendant. These arguments are unavailing.

As indicated by the filing of the instant motion, a lack of status conferences did not preclude Defendant from asserting his speedy trial right. In addition, to the extent that defense counsel implicitly relies on *Tigano* to highlight the difference between a defendant's intentions and his counsel's actions, that reliance is misplaced. Unlike the circumstances at hand, in *Tigano*, the defendant "himself made very clear that he desired a speedy trial." *See Tigano*, 880 F.3d at 617 ("Tigano requested his speedy trial so frequently and vociferously that it is simply inconceivable the government was not 'put on notice' that this issue would resurface if Tigano's speedy trial rights were not protected." (quoting *United States v. Buffalo Amusement Corp.*, 600 F.2d 368, 378 (2d Cir. 1979))). Indeed, as *Tigano* made clear, "the right to a speedy trial belongs to the defendant,

5

not to defendant's counsel." *Id.* at 618. The Court's job is not to intuit intent from silence. Accordingly, Defendant's failure to raise his speedy trial right until now weighs heavily against him. *See, e.g.*, *United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) ("The third factor weighs heavily against appellants. . . . [B]oth defendants waited roughly 22 months before advancing their speedy trial claims, and this hardly renders plausible their contention that an expeditious resolution of their cases was a matter of pressing constitutional importance for them."); *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir. 1980) (weighing the third *Barker* factor against the defendants where they "waited until immediately before trial to file their motion to dismiss on speedy trial grounds").

### D.  Prejudice to Defendant

The analysis of prejudice to the defendant should be conducted "in the light of the interests" that the speedy trial right protects: (1) "to prevent oppressive pretrial incarceration"; (2) "to minimize anxiety and concern of the accused"; and (3) "to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. In *Barker*, the Court instructed that the potential impairment of the defense is "most serious . . . because the inability of a defendant to prepare his case skews the fairness of the entire system." *Id.*

#### 1.  Prevent Oppressive Pretrial Incarceration

Defendant argues that the "dead time" he has spent incarcerated weighs in his favor, quoting *Tigano* for the argument that "confinement in local jails" is particularly oppressive. ECF No. 287-1, at 21. In that same observation, however, the *Tigano* court also referenced the length of the delay. *See Tigano*, 880 F.3d at 618 ("[The defendant's] nearly seven years of pretrial incarceration were egregiously oppressive; we reiterate that this appears to be the longest period of pretrial incarceration we have seen in a speedy trial context in this Circuit. In addition to the

6

sheer passage of time, his confinement in local jails makes those years particularly oppressive."). In that sense, the passage of time is intertwined with the notion of oppressiveness: the longer a defendant is confined in a local jail, the more he is subjected to that jail's inherently difficult conditions, and the more oppressive his stay becomes.

Defendant's incarceration is much shorter than the confinement at issue in *Tigano*. Accordingly, unless his facility has uniquely oppressive conditions beyond the norm, his circumstances are not comparable to those in *Tigano*.[2] With respect to Defendant's specific conditions, he claims that his "cell is infested with mice who crawl on him at night," and he complains that the "horrendous" jail "has no open air recreation or education programming." ECF No. 287-1, at 21. Defendant describes the Monroe County Jail as "*the worst he has ever seen.*" *Id.* (emphasis in original). Notably, however, Defendant has not been in Monroe County Jail for the entire period—or even the majority—of his incarceration. To the extent that the Defendant alleges that the conditions are uniquely oppressive, it appears that he has only been subjected to them for the past few months.

Defendant also argues that his confinement has impacted his family ties, such that his daughter no longer knows him. In addition, he says that he has lost his support network. Accordingly, the oppressive-incarceration interest may be affected, but not to the extreme of *Tigano*, and not far beyond any defendant with a family who is subjected to 32 months of confinement in local jails. To be clear, the Court does not dismiss the oppressiveness created by those factors, but the instant facts do not present any uniquely oppressive circumstances to be

---

[2] The Court fully recognizes that the facts in *Tigano* presented "a ceiling, rather than a floor, for Sixth Amendment analysis." *Tigano*, 880 F.3d at 619. The Court does not treat *Tigano* as a threshold standard, but—given Defendant's heavy reliance on *Tigano*—the Court does feel compelled to distinguish those facts from the facts at hand.

afforded additional weight, short of the general impact of extended pretrial incarceration in a local jail.

### 2. Minimize Anxiety and Concern to Accused

Defendant also cites *Tigano* to support his claim of "an inexcusable amount of anxiety." ECF No. 287-1, at 22 (quoting *Tigano*, 880 F.3d at 619). However, *Tigano* presented entirely different circumstances: the defendant was incarcerated for nearly seven years, and the *Tigano* court stressed that the defendant "made clear that he preferred to have the matter decided" rather than living with the anxiety. *See Tigano*, 880 F.3d at 619; *see also id.* at 618–19 (noting that the defendant "repeatedly expressed his anxiety to the district court and explicitly cited that anxiety as the primary motivation for his desire for a speedy trial"). In that respect, for the defendant in *Tigano*, the third *Barker* factor strengthened the fourth—because the defendant had repeatedly invoked his speedy trial right, the court reasoned that it reflected his underlying anxiety and concern. *See id.*

In explaining his own anxiety, Defendant points to being "cut off from his family" and "living in facilities that are infested with vermin and have no opportunities for personal growth or emotional and physical well-being." ECF No. 287-1, at 21. He claims that, as a result, he has lost weight and remains in a state of stress. While Defendant's claims fall within the second interest to be protected, they do not appear to be significantly different from those that any defendant incarcerated would suffer. Moreover, the three interests in the prejudice analysis speak to what "the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. The defendant in *Tigano* reiterated to the district court that the second interest—his anxiety—was prompting his desire for a speedy trial. Thus, in *Tigano*, the delay's effect on the anxiety-related interest was readily identifiable. Here, Defendant has no such record to strengthen his claims of anxiety and concern.

### 3. Limit Possibility that Defense Will Be Impaired

Defendant has pointed to no evidence that his defense has been impaired by the delay. In fact, Defendant simply dismisses this point, relying on *Tigano* to suggest that this third interest can be disregarded in light of the prejudice to the other two interests. At most, he cites the fact that his attorney is now an hour away, and he has no access to computers for legal research. As the *Barker* Court made clear, and as the Second Circuit has echoed, the third interest—impairment of the defense—remains the most serious in the analysis of prejudice. *See Barker*, 407 U.S. at 532; *see also, e.g.*, *Moreno*, 789 F.3d at 81.

Defendant emphasizes that "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Tigano*, 880 F.3d at 618 (quoting *Doggett*, 505 U.S. at 655). However, in *Tigano*, the defendant had stronger showings for the first two interests, and he had been detained for nearly seven years. As the *Doggett* Court explained, the potential prejudice to the defense—while, at times, difficult to identify—"increases with the length of delay." *See Doggett*, 505 U.S. at 655–56. While demonstrable prejudice may not always be required, the duration of Defendant's incarceration is much shorter than the extreme length in *Tigano*, and—as discussed—his showings for the first two interests are not particularly strong. *See, e.g.*, *Cain*, 671 F.3d at 297 ("Cain's assertion of prejudice focuses primarily on non-trial-related hardships that resulted from his pretrial detention, such as detriment to his business and family life. . . . [W]e have generally required a showing of some significant trial-related disadvantage in order to establish a speedy-trial violation." (internal citations omitted)). Considering this interest in light of the first two, the overall prejudice factor does not carry much weight in Defendant's favor.

### E. Balancing the Factors

In sum, the first, second, and fourth *Barker* factors each weigh slightly against the Government, but the third weighs heavily against Defendant. Taking those weights into consideration, the Court finds no violation of Defendant's constitutional right to a speedy trial. Accordingly, his Sixth Amendment claim fails.

## II. Speedy Trial Act Claim

Defendant argues that he has been denied his Speedy Trial Act ("STA") rights because the Court improperly imputed delays requested by his co-defendants to him. The STA mandates that trial "shall commence within seventy days" from the filing of the indictment, but courts may delay that tolling period for a variety of reasons enumerated in the statute. *See* 18 U.S.C. § 3161(c)(1), (h)(1)–(8).

As relevant here, the STA allows for "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." *Id.* § 3161(h)(6). In other words, courts may "impute delays requested by codefendants to all defendants." ECF No. 287-1, at 14. Defendant concedes as much, but argues that courts are governed by a "reasonableness" standard when doing so and recites a litany of ways in which the Court unreasonably imputed his co-defendants' requests for delays to him. *Id.* at 14–15 ("There is nothing reasonable about granting more than a year of delays in this case. . . . Even if the issues raised by the other codefendants took double the amount of time to investigate . . . that number still does not justify the 500 days of delay countenanced by the Court.").

There is indeed a reasonableness standard governing the Court's ability to impute delays to all co-defendants, but Defendant may not invoke this standard. To "benefit from the

reasonableness limitation of subsection (h)(6)," a defendant must first make a motion for severance. *Vasquez*, 918 F.2d at 336. If the defendant's motion for severance is denied, only then is he "entitled to the benefit of the reasonableness limitation on delays affecting co-defendants." *Id.* at 336. This severance requirement "serves both to alert the trial court to defendant's claim of speedy trial prejudice and to remove the possibility that a defendant might acquiesce in unreasonable pretrial delays of a co-defendant and then belatedly seek the 'reasonableness' protection of [subsection (h)(6)] in order to obtain dismissal of the indictment." *Id.* at 337. The severance requirement exists to prevent the exact scenario here, where Defendant failed to move for severance earlier and now belatedly invokes subsection (h)(6) of the STA. Defendant's Speedy Trial Act claim therefore fails.

## III.     Fifth Amendment Due Process Claim

In the event that the Court does not dismiss his case under the Speedy Trial Act or the Sixth Amendment, Defendant asks the Court to release him from confinement because his 33-month term of detention violates the Fifth Amendment Due Process Clause.

Pretrial detention "satisfies due process only if its purpose is regulatory rather than punitive." *United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012). Permissible regulatory purposes include "preventing danger to the community" and ensuring a defendant's "presence at trial." *Id.* To determine if pretrial detention has transgressed from regulatory to punitive, the Second Circuit considers three factors: (1) the strength of the evidence justifying detention; (2) the Government's responsibility for the delay in proceeding to trial; and (3) the length of the detention itself. *Id*. Plaintiff concedes that "the first factor is justified by the information in the bail report." ECF No. 287-1, at 24, but faults the Government for the remaining two factors.

As discussed earlier in this opinion, Defendants themselves—and not the Government—are largely responsible for the delay in proceeding to trial because they have repeatedly asked the Court for extensions. These extensions were necessary because Defendants had to view an inordinate amount of material to prepare their defenses and were only allowed to so in the presence of their lawyers, many of whom lived far away from their clients. Not once did Defendant object to the Court's granting of these extensions, and he himself moved for an extension on one occasion. Indeed, the Second Circuit has acknowledged that long detentions may be "justified in part by 'the inherent complexities of . . . large multi-defendant case[s], which present[] defense counsel with voluminous discovery to absorb and the court with myriad motions to address." *Briggs*, 697 F.3d at 102 (quoting *United States v. Hill*, 462 F. App'x 125, 127 (2d Cir. 2012) (summary order)). Such is the undoubtedly the case here. The second factor therefore disfavors Defendant.

The third and final factor, the length of the detention itself, "is not dispositive and will rarely by itself offend due process." *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000). Because there is "no bright-line limit on the length of detention that applies in all circumstances," *Briggs*, 697 F.3d at 103, every "case must be examined on its own facts." *United States v. El-Gabrowny*, 35 F.3d 63, 65 (2d Cir. 1994) (citing *United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1994)).

The facts here do not suggest that Defendant's pretrial detention period, by itself, offends due process. Defendant has been detained for more than 33 months, and if his case is not resolved before his July 23, 2018 trial date, his total pretrial detention period will have exceeded 37 months. The Court recognizes that this is an undoubtedly long period of time, but the Second Circuit and other courts in this district have held that much longer pretrial detention periods did not violate the Due Process Clause. *See, e.g.*, *United States v. Rounds*, 619 F. App'x 40, 41 (2d Cir. 2015)

(summary order) (holding that defendant's 65-month pretrial detention period did not violate his due process rights because the delay was largely attributable to the defense); *United States v. Jones*, No. 12-CR-125W, 2015 WL 4644527, at *6 (W.D.N.Y. Nov. 10, 2015) (holding that a pretrial incarceration period of 32 months, with the potential to last more than five years, did not violate defendant's due process rights because the delay was largely attributable to defendant and his co-defendants) *adopted in relevant part by United States v. Jones*, 143 F. Supp. 3d 78, 87 (W.D.N.Y. 2015).

In *Jones*, the court acknowledged that only serious crimes such as "bank robbery, racketeering, a continuing criminal enterprise, [or] drug crimes" justify especially long pretrial detention periods. *Id.* Even after admitting that the alleged crime in that case—conspiracy to commit wire fraud—was not such a crime, the court still upheld the defendant's pretrial detention period, which the court predicted to last as much as five years, on due process grounds. It did so largely because the Defendant continually consented to his co-defendants' requests for extensions. Given the outcome in *Jones*, the instant defendant's pretrial detention period withstands due process scrutiny even more clearly. As in *Jones* and as explained throughout this opinion, Defendant never objected to his co-defendants' requests for extensions. But, unlike the defendant in *Jones*, Defendant here is accused of dangerous criminal activity, which justifies a longer pretrial detention period than the wire fraud charges in *Jones*. As Magistrate Judge Schroeder stated in Defendant's detention order, the drug charges facing Defendant create "a presumption of danger to the community" under the Bail Reform Act of 1984. ECF No. 24, at 3. Magistrate Judge Schroeder also considered Defendant's extensive criminal history and his "propensity for engaging in criminal activities" when he initially ordered his detention, finding that there were "no

reasonable terms and conditions" that "would reasonably assure the safety of the community." ECF No. 24.

This brings the Court back to the ultimate inquiry that it must make in determining whether Defendant's due process rights have been violated: whether his detention still serves a permissible purpose. Defendant has not argued that the circumstances initially justifying his detention have changed or that he could be released without risking the safety of public. Consequently, the Court has no reason to doubt that Defendant's continued pretrial detention is still furthering the important and permissible regulatory purpose of preventing danger to the community. Defendant's due process claim is therefore DENIED.

## IV. Motion to Sever

In the alternative, Defendant asks the Court to try his case separately because he "continues to suffer prejudice behind bars because his codefendants have asked for numerous continuances, the Court has granted those continuances, and the Court has delayed this case because of its deliberations on codefendants' motions." ECF No. 287-1, at 25.

Defendant's assertions cannot overcome the "strong preference in the federal system for joint trials of defendants who are indicted together," *Zafiro v. United States*, 506 U.S. 534, 537 (1993), which is particularly strong when "the defendants are alleged to have participated in a common plan or scheme," as in the present case. *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998). This preference stems from the commonly-held belief that joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.' " *Zafiro*, 506 U.S. at 537 (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)).

A trial court should sever "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment

14

about guilt or innocence." *Id.* at 539. The possibility of the jury considering evidence against a defendant "that would not be admissible if a defendant were tried alone" is an example of a serious risk, as is the chance of "evidence of a codefendant's wrongdoing in some circumstances erroneously" leading "a jury to conclude that a defendant was guilty." *Id.*

Defendant's conclusory allegations of prejudice suggest no such risk. He does not argue that a joint trial will undermine his ability to defend himself at trial, nor does he point to any case law supporting his argument that delay of his case, by itself, is grounds for a severance. In fact, case law and legislative history support the opposite premise: Congress crafted the § 3161(h)(6) exception to the Speedy Trial Act discussed earlier in this opinion precisely because it "felt that the efficiency and economy of joint trials far outweighed the desirability of granting a severance where the criterion [for severance] was *simply the passage of time*." *United States v. Varella*, 692 F.2d 1352, 1359 (11th Cir. 1982), *quoted in Vasquez*, 918 F.2d at 337. The Court therefore denies Defendant's severance motion.

## CONCLUSION

For the reasons stated above, Defendant's Motion (ECF No. 287) is DENIED in its entirety.

IT IS SO ORDERED.

Dated: March 12, 2018
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court